UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY BESTER,

                         Petitioner,

        -vs-

**No. 06-CV-0511(VEB)**
**DECISION AND ORDER**

JAMES T. CONWAY, Superintendent,

                    Respondent.
_____

## I.      Introduction

*Pro se* habeas petitioner Anthony Bester ("Bester" or "Petitioner") seeks release from

state custody pursuant to 28 U.S.C. §2254. Bester was convicted following a jury trial of murder

in the second degree, and two counts of criminal possession of a weapon in the third degree. He

is currently serving an aggregate sentence of twenty-five years to life in prison.

## II.      Factual Background and Procedural History

### A.      The Trial

The incident giving rise to Bester's conviction was the murder of his father, Jesse Bester

("Mr. Bester"), on March 31, 1997. According to Petitioner's sister Lakisha Bester ("Lakisha"),

Petitioner and their father had maintained a good relationship, even though Mr. Bester had lived

outside the family household for nineteen years. He had returned home less than a year earlier to

help care for Petitioner, his son.

The day before the murder, Petitioner was observing striking Mr. Bester after Mr. Bester

told Petitioner's niece to get out of the kitchen while he was cleaning. Later that day, Petitioner's

conduct prompted Mr. Bester to take him to the hospital. However, Petitioner left the hospital without obtaining treatment.

Lakisha acknowledged that after Petitioner returned from the hospital, he told his mother that he wanted his father out of the house. T.910 (Citations to "T." followed by a numeral refer to pages from the transcript of Petitioner's trial.) Petitioner's girlfriend Fadra Rogers ("Rogers"), who was the mother of his children, also heard him say that. T.579, 591. Rogers testified that Petitioner was angry at his father for taking him to the hospital. T.594-595.

The following evening, at about 10:00 p.m., Petitioner entered his parent's bedroom with a shotgun and closed the door. His mother ran out and called 911. Petitioner then left the room, but he blasted his way back in as his father struggled to hold the door closed. T.603- 605.

Mr. Bester was able to escape the house and fled to a park, but Petitioner pursued him with a large knife and the shotgun. Petitioner eventually overtook his father. By the time Petitioner's attack was over, Mr. Bester had been shot twice and stabbed fifty-five times. T.751-752, 756.  Mr. Bester also suffered a broken jaw and dislodged teeth as a result of being kicked in the head. T.747-759.

As it related to the defense of insanity, the defense called Dr. Bakhai. The prosecution called Dr. Grace on rebuttal. The doctors reached different diagnoses, and formed different opinions as to whether Petitioner understood that his actions were wrong.

Dr. Bakhai diagnosed the defendant with schizophrenia, of the "paranoid" type, T.1017. Dr. Grace concluded that Petitioner suffered from schizophrenia, of the "undifferentiated" type. T.1125. They both concluded that he also was a substance abuser.

Petitioner had previous psychiatric admissions in 1994 and 1996. In 1994, his diagnosis

included schizophrenia, paranoid type; in 1996, the diagnosis was schizophrenia, undifferentiated type. T.1128, 1134, 1209, 1382. Dr. Grace testified that the particular type of schizophrenia was not important, because neither diagnosis by itself would resolve the legal question presented by the insanity defense. Dr. Bakhai agreed that schizophrenics can be responsible for crimes they commit. T.1136.

The thrust of the defense was that the defendant did not know what he was doing. According to Dr. Bakhai, Petitioner killed his father because he was suffering from command hallucinations, and because he believed that his father was an imposter. T.1026. Notably, however, Dr. Bakhai did not diagnose Petitioner with a delusional disorder. Dr. Bakhai denied that Petitioner had told him that voices commanded him to kill his father. T.1091-1092, 1095.

Dr. Bakhai concluded that Petitioner did not appreciate the wrongfulness of his conduct because he felt justified in defending his family from the perceived imposter. T.1035. However, Dr. Bakhai acknowledged, Petitioner did not explain how he was defending his family when he chased his unarmed, fleeing father into the park and killed him. T.1148.

Despite his opinion that Petitioner did not know that his conduct was wrong, Dr. Bakhai did not hold to that conclusion in his report following his examination of Petitioner. T.1154. Instead, Dr. Bakhai wrote that Petitioner did not know or appreciate the nature and consequences of his conduct. Dr. Bakhai reverted to his original conclusion that Petitioner did not know that his conduct was wrong in his trial testimony. T.1141-1143, 1145, 1153.

Dr. Bakhai admitted that he had destroyed the "couple of pages" of notes he took during his interview with Petitioner. T.1104.  With regard to Petitioner's auditory hallucinations, Dr. Bakhai's report did not indicate when the voices had started or stopped, or how many voices

Petitioner said he heard. T.1103-1104. Nor did it state that Petitioner made any reference to "imposters". With regard to some things that Petitioner told him about voices that were not in his report, Dr. Bakhai stated he had forgotten them . T.1105-1107. Significantly, Dr. Bakhai agreed that if Petitioner was not under the influence of delusions or hallucinations at the time he killed his father, then he was not legally insane. T.1179-1180 .

The prosecution's expert witness, Dr. Grace, testified that Petitioner did not suffer from delusions or hallucinations. Dr. Grace conducted his evaluation of Petitioner in the presence of the defense counsel. Dr. Grace took copious notes during the examination which he retained and had with him at trial. T.2265-1267, 1277.

Petitioner told Dr. Grace that he shot through the bedroom door because his father would not open it. He said that voices told him that his father had a gun and was going to kill him. Petitioner explained to Dr. Grace that he did not believe he had to obey those voices.

Dr. Grace testified that although Petitioner answered most questions promptly, he paused after being asked why he killed his father. T.1297. Petitioner eventually responded that he "guessed" that his father was going to kill him first. T.1297. However, Petitioner never told Dr. Grace why he thought his father was going to kill him. Nor did Petitioner ever tell Dr. Grace that he believed his father was someone else. T.1291, 1298-1299.[1]

Petitioner discussed his 1994 hospitalization with Dr. Grace, which was prompted by Petitioner's threats to shoot relatives on Thanksgiving Day. T.1279. During that hospital stay, Petitioner stated that he had problems with relatives coming over a lot. T.1113. Records from

---

[1]  Petitioner did not mention anything about "imposters" when he spoke to Nicky Farra, of Forensic Mental Health Services two days after he killed his father. T.1151-1152.

that admission included a statement that Petitioner had experienced no "command

hallucinations" T.1113-1114.  Petitioner did not tell Dr. Grace that he thought his relatives were

imposters. When Dr. Grace asked him why he did not shoot anyone during the Thanksgiving Day

incident, he answered that his mother had interfered. T.1279.

Dr. Grace concluded that Petitioner was a malingerer who did not believe that his father

was a dangerous imposter, based in part on Petitioner's failure to cease attacking his father long

after any perceived threat had ended, and by Petitioner's failure to show that he was relieved

when help arrived. T.1298-1303. Dr. Grace also considered that Petitioner, just one week prior to

the shooting, had told Dr. Brian Joseph that he had feigned being perplexed in an effort to avoid

incarceration on an unrelated criminal charge. T.1199, 1203, 1205. Dr. Grace concluded that

Petitioner understood the nature and consequences of his  actions, and understood that what he

was doing was wrong. T.1316-1317.

> **B.    The Direct Appeal**

On direct appeal to the Appellate Division, Fourth Department, of New York State

Supreme Court, Bester argued that he was erroneously deprived of one peremptory challenge; the

verdict was against the weight of the evidence; the indeterminate sentences on his convictions for

weapons possession were illegal; and the sentence for the murder conviction was harsh and

excessive and should be modified in the interests of justice.

The Fourth Department held that Bester had failed to preserve for review his contention

that the trial court deprived him of his right to a jury of his choice when it misinformed defense

counsel of the number of defendant's remaining peremptory challenges, and it declined to

exercise its power to review that contention as a matter of discretion in the interest of justice. The

Fourth Department also concluded that verdict was not against the weight of the evidence. The term of imprisonment imposed on the murder count was found to be not unduly harsh or severe.

The Fourth Department agreed with Bester that the terms of imprisonment imposed on the counts of criminal possession of a weapon in the third degree were unlawful. Because Bester was sentenced as a second felony offender, the maximum term of imprisonment for each of those counts was an indeterminate term of 3 ½ to 7 years. Accordingly, the Fourth Department modified the judgment and remitted the matter to the trial for re-sentencing on counts three and four of the indictment. *See People v. Bester*, 21 A.D.3d 1366, 1367 (App. Div. 4th Dept. 2005).

Bester did not seek leave to appeal to the New York Court of Appeals.

### C.      The Federal Habeas Petition

This timely habeas petition followed in which Bester has raised the following grounds for habeas relief: (1) because of his mental disease or defect (schizophrenia) no reasonable jury could have found him guilty of intentional murder; (2) the sentence was harsh, unjust, cruel and mean; and (3) appellate counsel was ineffective in depriving him of his right to seek discretionary leave to appeal to the New York Court of Appeals.

Respondent filed an answer and memorandum of law in opposition to the petition, asserting that the first ground is unexhausted because it was not presented in constitutional terms in state court, and that it should be deemed exhausted but procedurally defaulted. Respondent further argues that the claim is not cognizable on habeas review. With regard to the second claim, Respondent similarly  asserts that it is unexhausted because it was not presented in constitutional terms in state court, and that it should be deemed exhausted but procedurally defaulted.  Finally, Respondent argues that the third claim alleging ineffective assistance of appellate counsel is

-6-

unexhausted and should be dismissed under the court's authority to deny petitions containing

unexhausted claims, *see* 28 U.S.C. § 2254(b)(2).

Bester submitted two reply memoranda of law in response to Respondent's answer.

(Docket Nos. 13 & 16). In the first reply brief, Bester argued that his weight-of-the-evidence

claim did raise a constitutional issue because of he asserted an insanity defense; that his sentence

was racially discriminatory and "cruel and mean" in comparison to other sentences imposed for

defendants convicted of murder in the Fourth Department; and that his appellate counsel was

ineffective. Bester did not address Respondent's exhaustion and procedural default arguments.

During the pendency of this petition, Bester was transferred on August 2, 2007,  to a

facility run by the New York State Office of Mental Health ("O.M.H."). This was learned by the

Court when an item of mail sent to Bester was returned as undeliverable. In the interim, Bester

apparently was returned to general population. On March 31, 2009, mail sent to Bester at Attica

Correctional Facility was returned as undeliverable with the notation that Bester had not resided

there since November 2008. On July 12, 2010, Bester's address was updated from Clinton

Correctional Facility to Sullivan Correctional Facility, where he currently resides.

On July 19, 2010, Bester filed a second reply brief in which he simply provided further

argument on the merits of his weight-of-the-evidence claim.

The parties have consented to final disposition of this matter by a magistrate judge

pursuant to 28 U.S.C. § 636(c)(1).

For the reasons that follow, Bester's request for a writ of habeas corpus is denied.


**III.    Analysis of the Petition**

### A.      Ground One: Verdict Against the Weight of the Evidence

#### 1.      A claim that the verdict was against the weight of the credible evidence is not cognizable on federal habeas review.

On direct appeal, Bester challenged the verdict convicting him of murder as against the weight of the evidence. He argued that he had established that he was not responsible due to mental disease or defect and asked for relief based on New York Criminal Procedure Law ("C.P.L.") § 470.15(5), a state law provision authorizing the intermediate appellate court to reverse or modify a judgment based on the facts, rather than on the law. The Fourth Department summarily concluded that the verdict was not against the weight of the evidence.

Bester's claim regarding the weight of the evidence is not a federal constitutional claim cognizable in this habeas proceeding. A "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). A "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute. *People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (N.Y.1987) (weight of the evidence claim is based on court's factual review power; sufficiency of evidence claim based on the law); *accord, e.g.*, *People v. Romero*, 7 N.Y.3d 633, 642-43 (N.Y. 2006). On the other hand, a legal sufficiency claim is based on federal due process principles. *Id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

Because Bester's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. *See* 28 U.S.C. § 2254(a)  (permitting federal habeas

corpus review only where the petitioner has alleged that he is in state custody in violation of "the

Constitution or a federal law or treaty"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (habeas

corpus review is not available where there is simply an alleged error of state law); *Ex parte

Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to

review the weight of evidence . . ."), *aff'd*, 263 U.S. 255 (1923).

Therefore, it is dismissed as not cognizable. *Accord*, *e.g.*, *Garrett v. Perlman*, 438 F.

Supp.2d 467, 470 (S.D.N.Y. 2006) (dismissing claim that conviction was against the weight of

the evidence; such a claim is not a basis for habeas relief but presents only an error of state law,

for which habeas review is not available); *Feliz v. Conway*, 378 F. Supp.2d 425, 430 n. 3

(S.D.N.Y. 2005); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002); *Correa v.

Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001).

> **2.      Even construed as a claim of legal insufficiency, the claim is without
> merit.**

In keeping with the principle that complaints of *pro se* petitioners are to be considered

liberally in their favor, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), some habeas courts have

construed weight-of-the-evidence claims as insufficiency-of-the-evidence claims. *E.g.*, *Davis v.

McLaughlin*, 122 F. Supp.2d 437, 441 (S.D.N.Y. 2000) (treating petitioner's claim that his

conviction was against the weight of the evidence and that the prosecution did not prove his guilt

beyond a reasonable doubt as "legal sufficiency" claim).      Even if the Court were to construe

Bester's petition liberally as raising a claim that the evidence was legally insufficient to support

the verdict, habeas relief still would not be warranted. A conviction will be found to be supported

by sufficient evidence if, "'after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. at 319) (emphasis in original)). On habeas review, a court is not permitted to "'make its own subjective determination of guilt or innocence.'" *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999) (quoting *Herrera v. Collins,* 506 U.S. 390, 402 (1993)).   A habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues). Without a doubt, a habeas petitioner bears a "heavy burden" in challenging the sufficiency of the evidence supporting his conviction. *Id.*

It is clear that states are entitled to define both the crimes and defenses that govern its citizens. *Clark v. Arizona*, 548 U.S. 735, 126 S. Ct. 2709, 2719-20 (2006) (citing *Patterson v. New York*, 432 U.S. 197, 210 (1977) (other citation omitted)). Under New York law,

> [I]t is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either: 1. The nature and consequences of such conduct; or 2. That such conduct was wrong.

N.Y. PENAL LAW § 40.15(1)-(2). After the jury finds that the prosecution has met its burden of proving a defendant guilty beyond a reasonable doubt as to each element of the crime charged a defendant who asserts an insanity defense is required to prove by a preponderance of the

evidence that he should be found not guilty because he lacked criminal responsibility by reason of mental disease or defect. *People v. Kohl*, 72 N.Y.2d 191, 532 N.Y.S.2d 45, 527 N.E.2d 1182, 1183, 1185 (N.Y. 1988) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

Bester's arguments in his habeas petition repeat arguments made to the trier-of-fact, who was in the best position to observe the witnesses' demeanor and assess their veracity. *See*, *e.g.*, *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (noting that the federal habeas statute "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"); *United States v. Raddatz*, 447 U.S. 667 (1980)). It is thus beyond debate that a reviewing court must defer to the trier-of-fact's assessments of witness credibility. *E.g.*, *United States v. Vasquez*, 267 F.3d 79 (2d Cir. 2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility." ) (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility. . . .").

The Second Circuit has noted that alleged shortcomings in one psychiatric witness' testimony versus that of another are "at most matters of weight and credibility for the jury, whose role is to resolve 'battles of experts' testifying as to insanity." *United States v. Bohle*, 475 F.2d 872, 874 (2d Cir. 1973) (citing *Washington v. United States*, 129 U.S. App. D.C. 29, 390 F.2d 444, 445-446 (1967); *Blocker v. United States*, 110 U.S. App. D.C. 41, 288 F.2d 853, 862-864 (1961) (Burger, J., concurring)); *see also Bohle*, 475 F.2d at 875 ("We reject appellant's assertion that where facts equally support inferences of guilt beyond a reasonable doubt or innocence, the court must direct acquittal. While the issue of insanity was a close one, the jury could properly

conclude that Bohle was sane beyond a reasonable doubt when he unlawfully seized the aircraft.") (internal citation omitted).

Although Dr. Bakhai's testimony for the defense provided the jury with questions of fact relating to Bester's claim that he was not criminally responsible for his actions due to a mental disease or defect at the time of the murder, Dr. Bakhai did not necessarily establish, by a preponderance of the evidence, that Petitioner substantially lacked the capacity to know or appreciate either the nature and consequences of his actions or that such conduct was wrong. Dr. Grace testified that the particular type of schizophrenia with which Bester was diagnosed was immaterial, because neither diagnosis by itself would resolve the legal question of sanity. Furthermore, Dr. Bakhai agreed that schizophrenics can be responsible for crimes they commit.

From all of the evidence, reasonable jurors could have inferred either that Bester was totally delusional, as the defense contended, or that, despite his suffering from schizophrenia, he nevertheless was malingering and exaggerating his symptoms for his own gain, and knew what he was doing when he attacked his father and knew that it was wrong. Where, as here, "there is evidence from which the jury could have drawn an inference favorable to the accused but chose not to, the court must 'defer to . . . the jury's choice of the competing inferences.'" *Daily v. New York*, 388 F. Supp.2d 238, 248 (S.D.N.Y. 2005) (quoting *United States v. Kinney*, 211 F.3d 13, 18 (2d Cir. 2000) (other citation omitted)); *accord, e.g.*, *Gillis v. Edwards*, 445 F. Supp.2d 221, 230 (N.D.N.Y. 2006) (McCurn, D.J.)).

The jury was properly instructed as to Bester's defense that he lacked criminal responsibility for his admitted attack on his father by reason of mental disease or defect. Under the legal doctrines and procedures in effect, that question was for the jury as part of the process

of determining guilt. *E.g.*, *Bohle*, 475 F.2d at 875; *accord*, *e.g.*, *Gillis*, 445 F. Supp.2d at 230

("The jury is ultimately charged with determining whether an individual's claim of insanity has

been established in a court of law.") (citing *Connecticut Mut. Life Ins. Co. v. Lathrop*, 111 U.S.

612, 614-15 (1884) ("[w]hether [plaintiff's] strange demeanor . . . was the result of a deliberate,

conscious purpose to feign insanity . . . was a matter peculiarly within the province of the jury to

determine"); *United States v. Dupre*, 339 F. Supp.2d 534, 542 (S.D.N.Y. 2004) (stating that

"expert[ ] [witnesses] are precluded from reaching a definite conclusion about what mental state

a defendant actually possessed at the time of the offense because such testimony poses a uniquely

heightened danger of intruding on the jury's function")).

Bester is asking this Court, sitting in habeas review, to substitute its judgment in place of

the jury's determination concerning the issue of whether he lacked criminal responsibility for his

actions due to a mental disease or defect. This the Court may not lawfully do. Therefore, Bester's

claim attacking the sufficiency of the evidence support his convictions must be dismissed.

**B.     Ground Two: Excessive Sentence**

On direct appeal, Bester argued for a lesser sentence, relying upon the *prosecution's*

expert psychiatric witness' trial testimony that Bester had few active psychotic symptoms and

could function in the world. The Appellate Division found that the sentence was not harsh and

excessive under the circumstances and declined to exercise its discretion to reduce the length of

the sentence. Bester now argues that his sentence was harsh, unjust, cruel and mean, asserting

that the trial court abused its sentencing discretion by imposing an excessive sentence without

considering his mental illness as a mitigating factor. He also suggests that the trial court

discriminated against him, imposing the maximum term solely because he is African-American

**1.     To the extent Bester argues that his sentence violated the Eighth Amendment's proportionality clause, that claim is unexhausted.**

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995).  The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained.  *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)).  A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20.

The Court finds Bester's Eighth Amendment "excessive sentence" claim unexhausted because the constitutional nature of the claim was not "fairly presented" to the state courts on direct appeal.  Bester's Appellate Division brief presented his excessive sentence claim in terms of state law, invoking the power of a state appellate court to reduce sentences in the interest of justice under C.P.L. § 470.15(6)(b). This Court and other courts in this district have found that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" his/her constitutional claim in state court. *Accord*, *e.g.*, *King v. Cunningham*, 442 F. Supp.2d 171, 181 (S.D.N.Y. 2006) (collecting cases). Because Bester could return to state court and file a motion pursuant to C.P.L. § 440.20 to set aside the sentence on the ground that it is unconstitutional, his Eighth Amendment claim remains unexhausted.

Bester's failure to exhaust the Eighth Amendment claim is not fatal to this Court's

disposition of his application on the merits. Because the Court finds all of Bester's claims not wholly without merit, it has the discretion to dismiss the petition on the merits notwithstanding Bester's failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Pratt v. Greiner,* 306 F.3d 1190, 1197 (2d Cir.2002).

### 2.      Bester's claim regarding the length of his sentence is without merit.

The Supreme Court has articulated a principle of "gross disproportionality" for measuring whether a prisoner's sentence violates the Eighth Amendment proscription against "cruel and unusual punishment." *E.g.*, *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983); *Rummel v. Estelle*, 445 U.S. 263 (1980). Only extreme sentences that are grossly disproportionate to the crimes for which they are imposed can be said to violate the Eighth Amendment. *See id.*

As an initial matter, I note that the Second Circuit has held that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992). Although Bester did receive the maximum sentence allowable under statute, the sentence nevertheless was within the range authorized for the crime committed. Habeas courts in this Circuit consistently have rejected petitioners' claims of both abuse of discretion in sentencing and Eighth Amendment violations where their sentences are within the statutory range permitted. *E.g.*, *Peppard v. Fischer*, 739 F. Supp.2d 303, 309 (W.D.N.Y. 2010) (Bianchini, M.J.) (citing *Warren v. Conway*, No. CV–07–4117, 2008 WL 4960454, at *30 (E.D.N.Y. Nov. 18, 2008) (citing *White*, 969 F.2d at 1383); *Alvarez v. Scully*, No. 91 CIV. 6651(PKL), 1993 WL 15455, at *12 (S.D.N.Y. Jan. 11, 1993) (citing, *inter alia*, *Bellavia v. Fogg*, 613 F.2d 369, 373-74 (2d Cir.1979)).

When reviewing sentences imposed by state courts on habeas corpus review, the Supreme Court has instructed federal courts to "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem*, 463 U.S. at 290. *See also United States v. Gonzalez*, 922 F.2d 1044, 1053 (2d Cir.1991) (finding that courts should review the disproportionality of sentences only in rare cases because the legislature's fixing of terms for imprisonment is presumptively valid).

The "gross disproportionality" principle finds sentences disproportionate to their crimes "only in the exceedingly rare and extreme case" and is reserved "for only the extraordinary case." *Lockyer v. Andrade,* 538 U.S. 63, 73-77 (2003) (internal quotation marks and citation omitted); *see also United States v. Snype*, 441 F.3d 119, 152 (2d Cir. 2006) (noting that successful challenges to the proportionality of particular sentences have been exceedingly rare). Given the Supreme Court's precedent on this issue, I have no difficulty concluding that this case does not present one of those rare and extreme cases in which the Supreme Court contemplated intervention by a reviewing court into a state's sentencing decisions. Accordingly, I reject petitioner's claim that his sentence violated the Eighth Amendment.

C.     **Ground Three: Ineffective Assistance of Appellate Counsel**

1.     **The claim is unexhausted.**

Bester's claim of ineffective assistance of appellate counsel is unexhausted because he has never presented it to the state courts. The proper vehicle for exhausting a claim of ineffective assistance of appellate counsel is by means of an application for a writ of error *coram nobis* filed in the Appellate Division. Since there is no time-limit on the filing of *coram nobis* applications,

the claim remains unexhausted since Bester theoretically could return to state court and file such an application.[2]

In the past, a state prisoner's federal habeas petition had to be dismissed if the petitioner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). However, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). Respondent has raised the defense of non-exhaustion with regard to all Bester's claim of ineffective assistance of appellate counsel.

An exception to the exhaustion requirement set forth in *Rose v. Lundy*, *supra*, has been provided for by statute. Now, pursuant to the 1996 amendments to 28 U.S.C. § 2254, a district court may, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). Section 2254(b)(2) allows a district court to reach the merits of a habeas corpus petition despite nonexhaustion, thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim." *Steele v. Walter*, 11 F.

---

[2]         I note, however, that although he has been on notice of the exhaustion issue since Respondent filed his answer in October 2006, Bester has never addressed the non-exhaustion defense or sought a stay-and-abeyance order from this court so that he could pursue exhaustion of the claim in state court.

Supp.2d 252, 257 (W.D.N.Y. 1998) (quoting *Cowan v. Artuz*, No. 95 Civ. 9967 (RPP) (THK),

1996 WL 631726, at *5 (S.D.N.Y. 1996) (quoted in *Loving v. O'Keefe*, 960 F. Supp. 46, 49

(S.D.N.Y. 1997)).

Bester's ineffective assistance of appellate counsel claim fails under any standard of

review. Thus, it is appropriate for the Court to rely upon 28 U.S.C. § 2254(b)(2) in order to deny

the habeas petition in its entirety, notwithstanding Bester's failure to exhaust state remedies on

this claim.

> **2.      Bester cannot demonstrate that he was prejudiced by appellate counsel's failure to seek leave to appeal to the New York Court of Appeals.**

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.

This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397

U.S. 759, 771 n. 14 (1970) (emphasis added). The Supreme Court has explained that in giving

meaning to this requirement we must be guided by its purpose–"to ensure a fair trial"–and that

therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a Sixth Amendment claim, a petitioner must prove both that

counsel's representation "fell below an objective standard of reasonableness" measured under

"prevailing professional norms," *id*. at 688, "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at

694. *See also Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 2542-43 (2003); *United States v.*

*Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. *See Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992).

"The [New York] State Constitution limits the jurisdiction of the Court of Appeals in criminal cases, other than where the judgment is of death, to the review of questions of law." *People v. Mackell*, 40 N.Y.2d 59, 66 (N.Y. 1976) (Jasen, J., dissenting) (citing N.Y.Const., art. VI, § 3(a) ("The jurisdiction of the court of appeals shall be limited to the review of questions of law except where the judgment is of death, or where the appellate division, on reversing or modifying a final or interlocutory judgment in an action or a final or interlocutory order in a special proceeding, finds new facts and a final judgment or a final order pursuant thereto is entered; but the right to appeal shall not depend upon the amount involved.")).

Here, two out of the three arguments raised on appeal by appellate counsel all involved questions of fact–the claim that the verdict was against the weight of the evidence and that the sentence was harsh and excessive. With regard to both claims, Bester sought to have the Appellate Division exercise its statutorily-granted authority to review the underlying facts–namely, the evidence adduced at trial (in connection with the weight of the evidence claim) and Bester's personal and criminal history (in connection with the sentencing claim).

With regard to claim that the trial court abused its discretion in sentencing, it was solely fact-based, the Appellate Division affirmed based upon a factual determinations, and there was evidence in the record to support the determination. Thus, the Court of Appeals necessarily would have denied leave to appeal if appellate counsel had requested permission to present that issue. *See*, *e.g., Mangold v. Neuman,* 57 N.Y.2d 627, 628 (N.Y. 1982) ("The courts below

concluded that defendant's dwelling place, where she stayed occasionally in connection with her business activities, was not a residence for purposes of [*in personam* jurisdiction]. This affirmed factual determination is beyond the scope of our review, there being evidence in the record to support it.").

With regard to the claim that the verdict was against the weight of the evidence, in noncapital cases, the New York Court of Appeals "is without authority to review the Appellate Division's weight of the evidence determination[.]" *People v. Danielson*, 880 N.E.2d 1, 6, 849 N.Y.S.2d 480, 484 (N.Y. 2007) (citing KARGER, POWERS OF THE NEW YORK COURT OF APPEALS § 21:6, at 754). When the Appellate Division has not properly conducted that review, the New York Court of Appeals will reverse and remit to that court for further proceedings in accordance with *People v. Bleakley*, 69 N.Y.2d at 496. *Id.*  Here, however, Bester has not alleged or demonstrated that the Appellate Division failed to employ the correct legal standard such or, for instance, failed to weigh the conflicting testimony and conflicting inferences in light of the elements as charged at trial, *Danielson*, 880 N.E.2d at 6. Thus, there is no reasonable probability that the New York Court of Appeals would have granted leave to appeal on this issue. In short, Bester merely disagrees with the Appellate Division's ultimate determination on his weight-of-the-evidence claim, which is insufficient to obtain a merits-review by the New York Court of Appeals.

Finally, with regard to Bester's other sentencing claim raised on direct appeal–that the sentences on the weapons-possession convictions were illegal, I note that appellate counsel successfully argued that the sentences should be modified. Having obtained the relief requested from the Appellate Division, there would have been no basis for the Court of Appeals granting

leave to appeal.

Because Bester has not demonstrated a reasonable probability of a different outcome had appellate counsel sought leave to appeal, he cannot meet the "prejudice" requirement of *Strickland*. The Supreme Court has explained that the performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697. Bester's inability to demonstrate prejudice is fatal to his claim under *Strickland*. *See id.* Accordingly, Ground Three must be dismissed as without merit.

## IV.    Conclusion

 Anthony Bester's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Bester has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/  *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      April 21, 2011
                   Buffalo, New York